UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-60906-BLOOM/Valle

KAREEM WILLIAMS,

    Plaintiff,

v.

P.F. CHANG'S CHINA BISTRO, INC.,

    Defendant,
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant/Counter-Plaintiff, P.F. Chang's China Bistro, Inc.'s ("P.F. Chang's" or "Defendant") Motion for Summary Judgment on Counterclaim, ECF No. [19] (the "Motion"), seeking summary judgment on its Counterclaim filed against Plaintiff/Counter-Defendant Kareem Williams ("Williams" or "Plaintiff"). The Court has carefully reviewed the Motion, all supporting and opposing submissions, the record in this case, and applicable law. For the reasons set forth below, the Motion is denied.

### I. BACKGROUND

Plaintiff filed the instant action against Defendant on April 25, 2016, alleging race discrimination pursuant to 42 U.S.C. § 1981. Plaintiff, who was born in St. Croix and is African-Caribbean by ethnicity and/or race, was employed by Defendant as a line cook at its restaurant. Compl., ECF No. [1] ¶¶ 1, 5. Plaintiff asserts that the line cooks at the restaurant were predominantly of African descent whereas the management team was predominantly Caucasian. *Id.* ¶ 6. Plaintiff alleges that he was treated differently on account of his race and denied promotional opportunities regularly given to Caucasians, including the manager's repeated

refusal to permit him to take a proficiency test required for the advancement of cooks. *Id.* ¶¶ 7-12.

On June 14, 2016, Defendant filed a Counterclaim against Plaintiff, alleging that a settlement agreement was previously entered into between Defendant and Plaintiff based upon claims of sex and sexual orientation discrimination and that the instant race discrimination claim asserted by Plaintiff falls within the general release agreed to by the parties. Countercl., ECF No. [15] ¶¶ 9, 15.

By way of background, William's former counsel, Jeffery Del Rio, sent a demand letter dated January 25, 2016 to P.F. Chang's alleging discrimination based on his sex and sexual orientation in violation of Title VII of the Civil Rights Act of 1964. Defendant's Statement of Undisputed Material Facts, ECF No. [19] ("Def. SOF") ¶ 1; Ex. 1, ECF No. [19-1] at 4. The parties thereafter engaged in "lengthy settlement negotiations," which included a series of email correspondence between Mr. Del Rio and P.F. Chang's counsel, James Polkington. Def. SOF ¶ 2. On February 15, 2016, Mr. Del Rio sent an email to Mr. Polkinghorn, stating that "Mr. Williams [had] provided lowered authority at $9,500" to settle. Ex. B, ECF No. [19-1] at 7. Mr. Del Rio sent another email to Mr. Polkinghorn on February 17, indicating that Williams had rejected P.F. Chang's "$4,000 proposal but [had] provided lowered authority at $7,500, which appear[ed] to be his bottom line." Ex. C, ECF No. [19-1] at 8. On February 29, 2016, Mr. Del Rio sent yet another email to Mr. Polkinghorn, stating that "Mr. Williams indicated that if he [could] be paid for the time in which he [had] been suspended, he would be agreeable to a resolution at the $6,500 figure." Def. SOF ¶ 2; Ex. D, ECF No. [19-1] at 10.

On March 1, 2016, Mr. Polkinghorn responded that "[a]ssuming he means only the days he was actually otherwise scheduled, we agree. Please confirm that and we'll get a draft

settlement agreement over to you." Def. SOF ¶ 3; Ex. E, ECF No. [19-1] at 11. That same day, Mr. Del Rio sent Mr. Polkinghorn an email stating that "Mr. Williams is agreeable to settle this matter at $6,500, along with payment for his scheduled shifts that he was not able to work. [Williams] also requested that the no rehire provision be limited to [P.F. Chang's] and a copy of his employee file." Ex. F, ECF No. [19-1] at 13. The email further requested that settlement payment be mailed to Mr. Del Rio's firm's administrative office and indicated that one check was to be made payable to Williams for $3,900 and another check payable to Spielberger Law Group for $2,600. *Id.* On March 4, 2016, Abigail Kofman, counsel for P.F. Chang's, sent Mr. Del Rio a draft settlement agreement. Ms. Kofman clarified that the no-rehire provision applied to both P.F. Chang's and Pei Wei and that P.F. Chang's was unable to provide Plaintiff a copy of his personnel file per company policy. Ms. Kofman requested Mr. Del Rio have his client execute the agreement and return it. Def. SOF ¶ 5; Ex. G, ECF No. [19-1] at 15. Mr. Del Rio responded that same day with one revision, stating that the wage payment to Plaintiff should be $632.48 instead of $432. Def. SOF ¶ 5; Ex. H, ECF No. [19-1] at 20. On March 7, 2016, Ms. Kofman responded that P.F. Chang's had agreed to make the wage payment of $632.48 and attached the revised settlement agreement. Def. SOF ¶ 5; Ex. J, ECF No. [19-1] at 24.

On March 28, 2016, Ms. Kofman sent a letter to Mr. Del Rio enclosing a check payable to Williams in the amount of $632.48, a check payable to Williams in the amount of $3,900, and a check payable to the Spielberger Law Group, LLC in the amount of $2,600. The letter also stated that it "enclosed . . . a copy of [the] executed settlement agreement, which we ask that you send to Mr. Williams for execution. Please do not cash the attorney's fee check until you receive confirmation from Mr. Williams that he has accepted the settlement payment." Def. SOF ¶ 9; Ex. K, ECF No. [19-1] at 31. The attached agreement stated that "[i]n signing [the agreement],

Employee agrees and certifies that . . . he has carefully read and fully understands the provisions of this Agreement" and that "Employee has been allowed a reasonable period of time after receiving" the agreement in which to consider it before signing. Ex. K at 35. The agreement also included, in bold and capital letters, the following language: "Please read carefully. This agreement includes a complete release of all known and unknown claims." *Id.*

The agreement provided that P.F. Chang's was "release[d] and forever discharge[d]" from all and any claims arising from Williams' previous employment or separation of employment with P.F. Chang's and that Williams "waives and releases all similar rights and claims under all other federal, state, and local discrimination provisions . . . ." Def. SOF ¶ 7; Ex. K at 32. Defendant asserts that Plaintiff's race discrimination claim asserted in this action falls within this general release agreed to by the parties. Def. SOF ¶ 8. Defendant also argues that although Plaintiff has agreed to the settlement agreement as written, he has manifested his intention not to honor it and has refused to execute the written settlement agreement. *Id.* ¶ 10. Defendant maintains that this constitutes a breach of the parties' agreement and seeks summary judgment on its Counterclaim, as well as attorney's fees pursuant to a fee provision in the agreement. *Id.* ¶¶ 10-12.

## II. LEGAL STANDARD

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including *inter alia*, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "would affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *Howard v. Steris Corp.*, 550 F. App'x 748, 750 (11th Cir. 2013) ("The court must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor."). However, material facts set forth in the movant's statement of facts and supported by record evidence are deemed admitted if not controverted by the opposing party. S.D. Fla. L. R. 56.1(b).

"[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986); *see also Aurich v. Sanchez*, 2011 WL 5838233, at *1 (S.D. Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir. 1993)). The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006). Even where an

opposing party neglects to submit any alleged material facts in controversy, the court must still be satisfied that all the evidence in the record supports the uncontroverted material facts that the movant has proposed before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

### III. DISCUSSION

Defendant maintains that the settlement agreement must be enforced because the parties had a meeting of the minds and "clearly intended" to be bound by the terms of the agreement. Under Florida law, "[t]he party seeking a judgment on the basis of a settlement has the burden to establish a meeting of the minds or mutual reciprocal assent to a certain and definite proposition." *Long Term Mgmt., Inc. v. Univ. Nursing Care Ctr., Inc.*, 704 So. 2d 669, 673 (Fla. 1st DCA 1997). While uncertainty as to an agreement to nonessential or small items will not preclude a finding of an enforceable settlement, the agreement must be sufficiently specific and mutually agreeable as to every essential element. *See Don L. Tullis and Assocs., Inc. v. Benge*, 473 So. 2d 1384, 1386 (Fla. 1st DCA 1985) ("To be enforced, the agreement must be sufficiently specific and mutually agreeable on every essential element."); *Blackhawk Heating and Plumbing Co. v. Data Lease Financial Corp.*, 302 So. 2d 404, 408 (Fla. 1974); *Gaines v. Nortrust Realty Management, Inc.*, 422 So. 2d 1037, 1040 (Fla. 3d DCA 1982) ("Parties to a settlement agreement must reach mutual agreement on every essential element of the proposed settlement."). Preliminary negotiations or tentative and incomplete agreements will not establish a sufficient meeting of the minds to create an enforceable settlement agreement. "Nor may an agreement be determined to be final where the record establishes that it is the intent of the parties that further action be taken prior to the completion of a binding agreement." *Williams v. Ingram*,

6

605 So. 2d 890, 893 (Fla. 1st DCA 1992); *Albert v. Hoffman Elec. Constr. Co.*, 438 So. 2d 1015 (Fla. 4th DCA 1983)). "Settlement agreements are favored as a means to conserve judicial resources. Courts will enforce them when it is possible to do so." *Spiegel v. H. Allen Holmes, Inc.*, 834 So. 2d 295, 297 (Fla. 4th DCA 2002).

Plaintiff asserts that because he found the agreement unacceptable and did not himself sign the agreement, the agreement was never executed. Specifically, Plaintiff points to the language in the agreement stating: "Please read carefully. This document includes a complete release of all known and unknown claims." *See* Ex. K at 35. Plaintiff argues that this language implies that the document may be challenged and it is, therefore, not an agreement. Plaintiff further asserts that the agreement contains additional terms, including a waiver of jury trial, a confidentiality clause, a "gag provision of infinite duration," and a clause requiring Williams to indemnify P.F. Chang's from any claims by the Internal Revenue Service, and that Williams did not agree to these terms. *See* Resp., ECF No. [22] at 4 (citing Ex. K at 34-35).

Defendant argues that the settlement is enforceable despite Williams' failure to sign the agreement because, under Florida law, a settlement is enforceable against a party if the opposing party's attorney had clear and unequivocal authority to enter into the agreement. Mot. at 5 (citing *Williams v. Ingram*, 605 So. 2d 890, 893 (Fla. 1st DCA 1992); *Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999)[1]). Defendant maintains that, here, Mr. Del Rio, Williams' attorney at the time of the settlement negotiations, had authority to enter into the agreement, representing via correspondence with P.F. Chang's that his client had "authorized" him to make various demands. Mot. at 6 (citing Decl. of James C. Polkinghorn, Ex. A, ECF No. [19-1]

---

[1] Although the general proposition cited is correct, the Court notes, however, that the Eleventh Circuit in *Hayes* relied on Georgia, not Florida, law. *See Hayes*, 196 F.3d at 1254 ("An attorney of record is the client's agent in pursuing a cause of action and under Georgia law '[a]n act of an agent within the scope of his apparent authority binds the principal.'").

7

("Polkinghorn Decl.") ¶¶ 4-5 (citing Ex. B; Ex. C)). Although the argument is conspicuously sparse, Plaintiff disputes Defendant's assertion that "resolution was reached by counsel for the parties with the participation and authorization of their respective clients" by stating that Williams never agreed to the terms of the document. Def. SOF ¶ 4; Pl. Opp'n to Def. SOF, ECF No. [22] at 1 (disputing Def. SOF ¶ 4 because "Williams never agreed to the terms of the document").

Under Florida law, "the party seeking to compel enforcement of a settlement agreement . . . must demonstrate that [the opposing party's] attorney had clear and unequivocal authority to enter into the settlement agreement." *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1485 (11th Cir. 1994) (citing *Weitzman v. Bergman*, 555 So. 2d 448, 449-50 (Fla 4th DCA 1990); *Vantage Broadcasting Co. v. WINT Radio, Inc.*, 476 So. 2d 796, 798 (Fla 1st DCA 1985)). "Employment of an attorney to represent a client does not confer on the attorney implied or apparent authority to compromise or settle the client's claims." *Sharick v. Se. Univ. of Health Scis., Inc.*, 891 So. 2d 562, 565 (Fla. 3d DCA 2004). Similarly, "[a]n attorney's belief that he or she has the authority to settle does not alone establish such authority." *Id.* (citing *Weitzman,* 555 So.2d at 449 ("[c]aselaw indicates that courts have been very stringent in what they find to be a 'clear and unequivocal' grant of authority"); *Dixie Operating Co. v. Exxon Co., U.S.A.,* 493 So.2d 61, 63 (Fla. 1st DCA 1986) (declining "to place the determination of whether clear and unequivocal authority was given under the control of the attorney exercising the authority on the basis of good faith belief when a dispute over that authority arises between the attorney and client")).

Here, Defendant has failed to meet that burden. Although Defendant represents that Mr. Del Rio's communication conveyed that he had authority to enter into the settlement agreement,

8

the attached correspondence does not demonstrate that Mr. Del Rio had such "clear and unequivocal" authority to enter into the agreement.

The record evidence demonstrates that Mr. Del Rio initially stated on February 15, 2016 and February 17, 2016 that Williams had provided "lowered authority" at $9,500 and then $7,500, respectively. *See* Ex. B; Ex. C. It is unclear, however, whether this purported authority continued with regard to subsequent communication between counsel. In his March 1, 2016 correspondence, Mr. Del Rio indicated that Mr. Williams "is agreeable to settle this matter" for $6,500 plus payment for the scheduled shifts Williams was unable to work, and instructed Mr. Polkinghorn to whom the settlement payment checks were to be made payable and mailed. *See* Ex. F. In that correspondence, Mr. Del Rio also conveyed that Williams requested that the no-rehire provision be limited to P.F. Chang's and that Williams requested a copy of his employee file. *Id.* P.F. Chang's counsel, attaching a draft of the settlement, responded to Mr. Del Rio's March 1, 2016 email that the no-rehire provision would apply to both P.F. Chang's and Pei Wei and that P.F. Chang's was unable to provide Williams a copy of his personnel file. *See* Ex. G. Mr. Del Rio responded only with a revision to the wage payment amount, to which P.F. Chang's agreed. *See* Ex. H; Ex. J. Again, however, it is unclear if Williams had authorized Mr. Del Rio to accept certain provisions of this draft agreement, such as the no-rehire provision as applied to both P.F. Chang's and Pei Wei or the wage payment amount.[2] The Court accordingly

---

[2] With regard to Plaintiff's argument that he did not agree to certain additional terms, including a waiver of jury trial, a confidentiality clause, a "gag provision of infinite duration," and a clause requiring Williams to indemnify P.F. Chang's from any claims by the Internal Revenue Service, these "nonessential terms or small items" do not preclude enforcement. *Spiegel*, 834 So. 2d at 297 ("Uncertainty as to nonessential terms or small items will not preclude the enforcement of a settlement agreement."); *see also U.S. ex rel. Osheroff v. MCCI Grp. Holdings, LLC*, No. 10-24486-CV, 2013 WL 3991964, at *5 (S.D. Fla. Aug. 2, 2013) (citing *McDonnell v. Engine Distribs.,* 2007 WL 2814628, at *8 (D.N.J. Sept. 24, 2007) ("The fact that [the parties'] proposed memorializations vary considerably with one another in no way disturbs the validity of that agreement. The disputed terms—concerning the scope of the release,

finds that Defendant has not met its burden of demonstrating that Mr. Del Rio had "clear and unequivocal" authority to enter into the settlement agreement.

Further, based on the evidence, it appears that both parties contemplated Williams' signature as necessary to execute the settlement. An agreement is not to be "determined to be final where the record establishes that it is the intent of the parties that further action be taken prior to the completion of a binding agreement." *Williams v. Ingram*, 605 So. 2d 890, 893 (Fla. 1st DCA 1992). Here, P.F. Chang's counsel twice directed Mr. Del Rio to have Williams execute the agreement. *See* Ex. G ("Please have your client execute the Agreement and return it to our attention at your earliest convenience."); Ex. K ("[E]nclosed is a copy of our client's executed settlement agreement, which we ask that you send to Mr. Williams for execution."). P.F. Chang's counsel also asked Mr. Del Rio to "not cash the attorney's fee check until [he] receive[d] confirmation from Mr. Williams that he [had] accepted the settlement payment." Ex. K.

The document itself also appears to necessitate Williams' signature, stating that "[i]n signing [the agreement], Employee agrees and certifies that . . . he has carefully read and fully understands the provisions of this Agreement" and that "Employee has been allowed a reasonable period of time after receiving" the agreement in which to consider it before signing. *Id.* at 35. The Court recognizes that Florida courts have held that execution of a settlement document is not necessary to enforce a settlement, emphasizing instead whether the settlement agreement is specific and mutually agreeable as to every essential element. *See Patrick v. Christian Radio*, 745 So. 2d 578 (Fla. 5th DCA 1999); *Boyko v. Ilardi*, 613 So. 2d 103, 104 (Fla. 3d DCA 1993) (holding that both parties expressly agreed to a binding oral settlement agreement and therefore "the execution of the settlement documents was not a condition precedent to the

---

ensuring payment, tax treatment, indemnification, and the scope of confidentiality—all speak to the settlement's implementation. They are not, however, essentials of the settlement.")).

settlement agreement, but rather a mere procedural formality which both parties to the settlement were obliged to perform").

However, cases in which Florida courts have held that execution of an agreement is a mere procedural formality are distinguishable here. In *Patrick*, for example, an agreement, entered into by attorneys who were authorized to settle, provided that the settlement amount was not to be "distributed until the executory documents referenced in [the] agreement have been signed, sealed and delivered to the appropriate parties." *Patrick*, 745 So. 2d at 579-80. The Court held that "[o]n its face, this language does not appear to delay a settlement until after the settlement money has been paid out and the 'executory documents' have been 'signed, sealed and delivered'; rather, this clause appears to be directional as to how events should unfold in light of the settlement that had been reached." *Id.* at 580. In contrast, here, the document appears to set forth certain conditions precedent to execution, including that Williams be allowed time to consider the agreement before signing. These requirements are more than mere procedural direction as to how the "events should unfold" in light of an existing settlement.

## IV. CONCLUSION

Because Defendant has not met its burden to demonstrate that Mr. Del Rio, as Williams' attorney, had "clear and unequivocal" authority to enter into a settlement, and in light of P.F. Chang's statements and the language of the document contemplating Williams' signature, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment as to its Counterclaim, **ECF No. [19]**, is **DENIED**.

Case No. 16-cv-60906-BLOOM/Valle

**DONE AND ORDERED** in Miami, Florida, this 16th day of August, 2016.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record